UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT R. MATTHEWS,

    *Plaintiff*,

v.

DENIS R. MCDONOUGH, *et al.*,

    *Defendants*.

Civil Action No. 21-1607 (RDM)

### MEMORANDUM OPINION AND ORDER

For the reasons that follow, the Court will **DENY** Plaintiffs' motions for leave to amend, Dkt. 68; Dkt. 70; Dkt. 71; Dkt. 72; Dkt. 77, and will **DENY** Defendants' motion to dismiss, Dkt. 64.

**A.**

This case arises out of medical treatment Matthews received at a Department of Veterans Affairs ("VA") facility in Washington, D.C. *See* Dkt. 39. Matthews initiated the case by filing a succession of *pro se* complaints related to his treatment. Defendants moved to dismiss Matthews's third amended complaint on November 28, 2022. Dkt. 20. While that motion was pending, Matthews moved for leave to file his fourth, fifth, sixth and seventh proposed amended complaints. *See* Dkt. 23; Dkt. 28; Dkt. 31; Dkt. 37. On June 26, 2023, the Court granted Defendants' motion to dismiss and denied Matthews's four pending motions for leave to file successive complaints as futile. *See* Dkt. 39. Each of his filed and proposed complaints suffered from multiple deficiencies, including failure to comply with Federal Rules of Civil Procedure 8 and 10, and failure to state a claim for purposes of Rule 12(b)(6). *See generally id.* The Court's order dismissing the third amended complaint, however, granted Matthews "one final

opportunity" to file a motion for leave to amend.  *Id.* at 5.  The Court emphasized that "the proposed complaint must abide by the Federal Rules of Civil Procedure."  *Id.*  On July 21, 2023, Matthews once again moved for leave to amend, attaching an eighth proposed amended complaint.  Dkt. 41.  That complaint contained similar deficiencies, and the Court scheduled a hearing on the motion to determine how to move the case forward.

At the hearing on November 14, 2023, the Court noted that it was "struggling . . . to figure out [Matthews's] claim" and asked Matthews whether he could find a lawyer to assist him with his case.  Hrg. Tr. (Rough at 16).  The Court agreed to stay the action for 90 days until February 16, 2024, to grant Matthews time to find counsel who could help him prepare an amended complaint.  *Id.* (Rough at 26).  The Court advised Matthews that this stay was his "final opportunity" and that, unless counsel filed such a motion, the case would be "dismiss[ed]."  *Id.*  Matthews confirmed, "I understand."  *Id.*  On February 16, 2024, Matthews filed a motion for leave to amend as a "Pro Se Litigant" with "help from a family member [who is] an Attorney."  Dkt. 50 at 1.[1]  The Court granted that motion, finding that although Matthews's complaint "still suffer[ed] from some of the same infirmities as his prior attempts . . .[,] he ha[d] now provided enough context . . . that his claim can be discerned."  Dkt. 59 at 1.

Defendants moved to dismiss the operative complaint on November 26, 2024.[2]  *See* Dkt. 64.  The Court then issued a *Fox* order, directing Matthews to respond to the motion to dismiss.  *See* Dkt. 65.  Matthews responded by filing several motions styled, with some superficial differences, as "Motion[s] for Leave to Amend Complaint in Opposition of Defendants' Motion

---

[1] While that motion was pending, Matthews filed two other Motions to Amend, Dkt. 53; Dkt. 56, both of which the Court denied, in part, because they were "violative of the Court's directive that Plaintiff would have only one more opportunity to file."  Min. Entry (Apr. 22, 2024).

[2] The operative complaint appears at Dkt. 60.

2

to Dismiss," Dkt. 68; Dkt. 70; Dkt. 71; Dkt. 72; Dkt. 77. Defendants opposed the first several motions to amend, *see* Dkt. 69; Dkt. 75, but they have yet to respond to Matthews's most recent motion.

The Court will **DENY** each of these successive motions for leave to amend for two reasons. *First*, the complaints attached to each of these motions do not substantially differ from the operative complaint. *Second*, the Court made clear both at the hearing on November 14, 2023, and in its rulings on Matthews's numerous previous attempts to amend his operative complaint, that he would not be given any subsequent chances to amend his complaint. *See, e.g.*, Dkt. 48. The Court will, however, consider the content of those motions, and the contents of Matthews's replies in support of them, *see* Dkt. 70; Dkt. 76, in resolving Defendants' motion to dismiss.

**B.**

A motion to dismiss is designed to "test[ ] the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In evaluating a motion to dismiss, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," *id.* at 555–56. Where, as here, the plaintiff is proceeding *pro se*, the Court will hold his pleadings "to less stringent standards than formal

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted).

Matthews brings suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), alleging that he received negligent medical treatment at a VA facility. Because negligence actions brought under the FTCA are assessed in accordance with the relevant state law, *see FDIC v. Meyer*, 510 U.S. 471, 478 (1994), Matthews's claims are governed by medical malpractice standards in the District of Columbia. "Under District of Columbia law, the plaintiff in a medical malpractice action must demonstrate by a preponderance of the evidence three elements: (1) the applicable standard of care; (2) the fact that the defendant, through his or her actions or inactions, deviated from that standard of care; (3) and that a causal relationship exists between the defendant's deviation and the plaintiff's injuries." *Bederson v. United States*, 935 F. Supp. 2d 48, 73 (D.D.C. 2013) (collecting cases).

According to Matthews, his VA doctor breached the standard of care by administering two medications that can cause allergic reactions, even though the doctor knew that Matthews had experienced allergic reactions to other medications in the past. Matthews alleges that he suffered a "serious allergic reaction" to Depakote and Aripiprazole after a doctor at the VA hospital in Washington, D.C., administered these medications to him on March 11 and 12, 2020. Dkt. 60 at 2–3 (Am. Compl. ¶¶ IV–VII). According to Matthews, these medications both list "severe side effects warning labels for dysphagia and angioedema," which "demonstrate" that those medications carry "health risks of serious allergic reaction." *Id.* at 2–3 (Am. Compl. ¶¶ V–VI). Matthews also alleges that the "medical doctors at the treating facility" knew that he had experienced "several inpatient hospitalizations" in 2016 and 2017 "for angioedema and subsequently dysphagia," which should have alerted his doctors to his susceptibility to allergic

4

reaction. *Id.* at 3 (Am. Compl. ¶ VI). Matthews alleges that these facts establish "a breach in the standard of care in the level at which similarly qualified medical professionals would have managed the care under the same, or similar circumstances." *Id*. (Am. Compl. ¶ III).

Defendants contend that "Matthews [has] fail[ed] sufficiently to plead the second and third elements" of medical malpractice. Dkt. 64 at 3. On Defendants' view, Matthews's claims fail as a matter of law because he admits in his complaint that his prior allergic reactions were to a different type of drug than the drugs at issue in this case. "Matthews' claims are based on his alleged allergic reactions to Depakote and Aripiprazole in March 2020," but the allergy "noted in his medical records" was "to non-steroidal anti-inflammatory drugs ("NSAIDS")," and neither Depakote nor Aripiprazole is an NSAID. Dkt. 64 at 3, 4 n.4. On Defendants' view, that ends the case, because it means that the allergic reaction Matthews complains of was "new and unrelated to his previously known allergies" and that the doctors therefore did not breach the standard of care when they prescribed Depakote and Aripiprazole. *Id.* at 4.

That factual contention is plausible—and might ultimately prevail. But at the motion to dismiss stage, the Court must draw all reasonable inferences in the light most favorable to the nonmoving party, and, applying that standard, the Court cannot conclude, as a matter of law, that it was within the standard of care for a doctor to prescribe a drug that carries a risk of allergic reaction if the doctor knows that the patient has suffered from allergic reactions to *different* drugs in the past. That determination likely turns, for example, on the chemical or biological similarities and differences of the drugs, any existing medical studies, and clinical experience.

The four cases cited by Defendants in support of their motion are not to the contrary. Those cases stand for two related propositions, neither of which settles the pending motion to dismiss: The first group of cases stand for the uncontroversial proposition that it is a breach of

5

the standard of care for a physician to administer a drug to which the patient has a known allergy. *Walstad v. Univ. of Minn. Hosps.*, 442 F.2d 634, 640–41 (8th Cir. 1971); *Saidon v. Kellner*, No. X01CV010170558S, 2002 WL 959929, at *2 (Conn. Super. 2002). That proposition does not aid the resolution of this case, in which the known allergy was to a drug different than the one administered.

The other group of cases are also unhelpful. They hold only that a physician does not breach the standard of care when she has no reason to suspect that her patient was allergic to the administered drug. *See Smith v. United States*, 394 F.2d 482, 483 (5th Cir. 1968) (no error when judge, sitting as trier of fact, found that a patient's "idiosyncra[tic]" reaction to a drug "was not known and could not have been known to the hospital [or] the doctors"); *Tangora v. Matanky*, 231 Cal. App. 2d 468, 472 (Cal. 1964) (no negligence where, before administering penicillin, the physician asked the patient "whether she was allergic in general; whether she was allergic to penicillin to which she stated she had had penicillin several times without any signs of allergy; asked her if she ever had asthma, hay fever or hives, to all of which she answered in the negative").

Here, Matthews plausibly alleges that the VA doctors had reason to suspect that he would experience an allergic reaction to the new drugs because of his history of susceptibility to drug-induced allergic reactions. In the absence of binding precedent or persuasive authority to the contrary, the Court cannot, without the benefit of expert or similar testimony, decide what amounts to a dispute over the relevant standard of care. Another decision from this Court has allowed a similar claim to proceed to expert discovery, *see Harling v. Dep't of Veteran Affs.*, No. 19-cv-01442 (ABJ), 2021 U.S. Dist. LEXIS 50874, at *8 (D.D.C. Mar. 18, 2021) (permitting expert discovery where the complaint alleged that physicians prescribed a medication to the

plaintiff without "ask[ing] him about any existing allergies," "giv[ing] heed to his concerns[,] or review[ing] his medical records"), and the Court is not persuaded that this case merits different treatment.

Nor does Matthews's complaint fail as a matter of law because "he had been prescribed Aripiprazole for several months already by the time of his alleged allergic reaction." Dkt. 64 at 4. To start, the Court has no basis to conclude, at this early stage of the proceeding, that a delay in reaction obviates any possible negligence; it is unclear, for example, whether an allergic reaction is triggered only after a sufficient quantity of the drug has collected in the patient's system. And even more importantly, Matthews's complaint is predicated on receiving two different drugs—Depakote and Aripiprazole—and, thus, even if a claim premised on the prescription of Aripiprazole alone might stand on shaky ground, that is not what he alleges.

Finally, Defendants contend that Matthews has failed to plead causation because the allergic reaction alleged in his complaint is "consistent with" his having experienced a reaction to NSAIDs, rather than to the prescribed medications. Dkt. 64 at 6. That possibility, on Defendants' telling, undermines Matthews's contention that there was a causal connection between the medications he was prescribed and his allergic reaction. *Id.* At the motion to dismiss stage, however, where the Court must credit all plausible allegations in the complaint and grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged," *Brown v. Whole Foods Mkt. Grp. Inc.*, 789 F.3d 146, 150 (D.C. Cir. 2015), it is not enough for a defendant to propose a competing explanation for the plaintiff's injury. Matthews alleges that he had an allergic reaction to Aripiprazole and Depakote. *See* Dkt. 60 at 4 (Am. Compl. ¶ IX). That allegation is not implausible on its face, and is, in fact, supported by his other filings, which clarify that contemporaneous medical records allegedly diagnosed him with "allergic reaction[s]"

7

to Aripiprazole and Depakote, Dkt. 77 at 8, 10. *See Brown*, 789 F.3d at 152 (instructing that a district court should "consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss"). On this record, the Court is persuaded that Matthews has sufficiently alleged causation to survive a motion to dismiss.

The Court, accordingly, concludes that Defendants have failed to carry their burden of demonstrating that the facts, as alleged in the operative complaint, fail to state a plausible claim for relief under the FTCA. At the summary judgment stage of the litigation, Matthews will bear the burden of offering evidence sufficient to permit a reasonable jury to find that he suffered a cognizable, medical injury due to a deviation from the applicable standard of care. *See Briggs v. WMATA*, 481 F.3d 839, 841 (D.C. Cir. 2007). "Generally, . . . these elements usually must be established by expert testimony, particularly in medical malpractice cases." *Harling*, 2021 U.S. Dist. LEXIS 50874, at *12 (citing *Rhodes v. United States*, 967 F. Supp. 2d 246, 289 (D.D.C. 2013) (collecting cases)). "[T]he requirement of expert testimony is designed to mitigate the risk that findings might be 'based on mere conjecture or speculation[,]' or incorrect assumptions." *Bederson v. United States*, 935 F. Supp. 2d 48, 73 (D.D.C. 2013) (quoting *Giordano v. Sherwood,* 968 A.2d 494, 498 (D.C. 2009)). It remains to be seen whether Matthews can carry that burden. But to dismiss his complaint now, without the benefit of expert testimony, would be to do so "based on mere conjecture or speculation." *Id.*

## CONCLUSION

Accordingly, the Court will **DENY** Defendants' motion to dismiss, Dkt. 64. It is further **ORDERED** that the parties shall meet and confer and file a joint status report on or before July

11, 2025, proposing to the Court next steps in this litigation.

    **SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  June 12, 2025